**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SEGUNDO GUAMAN LOJA,

Petitioner,

v. 9:26-cv-1584 (AMN)

DAVID VENTURELLA, *in his official capacity as Acting Director of the Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*; TODD BLANCHE, *in his official capacity as Attorney General of the United States*; PHILIP RHONEY, *in his capacity as Acting Field office Director, Buffalo Field Office, Immigration and Customs Enforcement*,

Respondents.

---

**APPEARANCES** **OF COUNSEL:**

**LAW OFFICE OF KATHY MANLEY** — **KATHY MANLEY, ESQ.**
26 Dinmore Road
Selkirk, New York 12158
*Counsel for Petitioner*

**UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF NEW YORK** — **ALEXIS M. OSBORNE, ESQ.**, Assistant United States Attorney
445 Broadway
Albany, New York 12207
*Counsel for Respondents*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On August 18, 2026, United States Immigration and Customs Enforcement ("ICE") arrested petitioner Segundo Guaman Loja ("Petitioner") while conducting a targeted traffic stop in Albany, New York. Dkt. No. 1 at ¶¶ 1, 16; Dkt. No. 6 at 2.[1] That same day, Petitioner filed an emergency petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking, *inter alia*, immediate release. Dkt. No. 1 ("Petition"). This Court then issued an order directing the above-captioned federal officers ("Respondents") to show cause why the Petition should not be granted. Dkt. No. 4. Based on Respondents' representations that the Northern District of New York lacks a federal immigration facility and that the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York is the closest such facility, the Court prohibited Respondents from moving Petitioner outside the jurisdiction of the Northern and Western Districts of New York during the pendency of this matter. *Id.*

On August 24, 2026, after careful consideration of the parties' submissions, Dkt. Nos. 1, 6, 7, the Court issued a short, written order granting the Petition and ordering Petitioner's immediate release, Dkt. No. 8. Respondents have submitted a status report indicating compliance with the order and stating that petitioner was released on August 25, 2026. Dkt. No. 9.

The Court previously indicated that it would issue a longer written decision explaining its ruling in due course, *see* Dkt. No. 8 at 2, and now sets forth that explanation.

## II. BACKGROUND

Petitioner is a native and citizen of Ecuador. Dkt. No. 1 at ¶ 10. Plaintiff alleges that on August 18, 2026, he was detained during "an apparently warrantless traffic stop" in Albany, New

[1] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

York. *Id.* at ¶ 16. At the time of his arrest, Plaintiff alleges that he had a pending asylum application, a valid work permit, and no pending Notice to Appear. *Id.* at ¶¶ 15, 16 n. 1.

In their response, Respondents assert that Petitioner entered the United States at the southern border on or about June 20, 2019. Dkt. No. 6 at 1. United States Border Patrol arrested and then released Petitioner on his own recognizance on June 22, 2019. *Id.*; Dkt. No. 6-2 (Forms I-286, I-220A). Petitioner was served with a Notice to Appear ("NTA") on July 29, 2021. Dkt. No. 6-3 at 5. Respondents' submissions indicate that an immigration judge terminated Petitioner's removal proceedings on November 21, 2025. Dkt. No. 6 at 1 n.2; Dkt. No. 6-4 at 3 (Form I-213). As to Petitioner's arrest on August 18, 2026, Respondents assert that they arrested Petitioner pursuant to a Form I-200 administrative warrant and they further maintain that his detention is authorized under 8 U.S.C. § 1225(b) ("Section 1225(b)"). Dkt. No. 6 at 2, 4; Dkt. No. 6-5. Respondents also assert that Plaintiff was served with a new Notice to Appear the day after ICE detained him. Dkt. No 6-3 at 1-3.[2]

Petitioner asserts that because he was already residing in the United States, he was not seeking admission to the United States, and thus his detention is governed by 8 U.S.C. § 1226(a) ("Section 1226(a)") and not Section 1225(b). Dkt. No. 1 at ¶¶ 45-47. In addition, Petitioner alleges that ICE failed to exercise any discretion in deciding whether to detain him, thereby violating his Fifth Amendment Due Process rights and as well as the provisions of the Administrative Procedure Act. *Id.* at ¶¶ 48-56.

[2] The most recent Form I-213 submitted by the Government indicates that on May 17, 2026, Plaintiff was arrested and charged with misdemeanor driving while intoxicated ("DWI"). Dkt. No. 6-4 at 3. In their letter brief, Respondents list multiple misdemeanor and violation charges arising from the May 17 arrest. Dkt. No. 6 at 2 n. 3. However, as support, the Government cites the most recent Form I-213, which indicates only the misdemeanor DWI charge. *Compare id. with* Dkt. No. 6-4 at 3. Regardless, Respondents admit that the arresting ICE officer did not know about Petitioner's pending state charges at the time of the August 18, 2026 arrest. Dkt. No. 6 at 2 n. 3.

## III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241, a district court is authorized "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). It is well-settled that "[n]oncitizens are also entitled to challenge through habeas corpus the legality of their ongoing detention." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Boumediene v. Bush*, 553 U.S. 723, 771 (2008)). "The 'necessary scope' of this review and resulting relief 'in part depends upon the [procedural] rigor of any earlier proceedings.'" *Id.* (alteration in original) (quoting *Boumediene*, 553 U.S. at 781). And "[t]he Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* (first quoting *Boumediene*, 553 U.S. at 781-83, 786; and then citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 301-02 (2001)).

## IV. DISCUSSION

### A. Statutory Authority

Respondents acknowledge that the Second Circuit's holding in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), likely controls here. Dkt. No. 6 at 3. In *Barbosa da Cunha*, the Second Circuit clarified the respective applications of Sections 1226(a) and 1225(b). "Section 1226(a) plainly applies to noncitizens . . . who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *Barbosa de Cunha*, 175 F. 4th at 73. By contrast, Section 1225(b)(2) "applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization." *Id.* at 74. And specifically, "Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,'" which are two

terms distinguished by their temporal scope—the former "may be either someone applying right now or someone who applied in the past," while the latter "refers only to a noncitizen currently seeking admission." *Id.* at 74-77. Respondents also acknowledge that after Petitioner's release on recognizance in 2019, Petitioner continued to reside in the United States for more than seven years until his arrest by ICE on August 18, 2026. Dkt. No. 6 at 2. Thus, Respondents concede that it is likely that the Court will apply the holding of *Barbosa da Cunha* here to find that Petitioner's detention is governed by Section 1226(a). *Id.* at 3.

Indeed, because Petitioner has resided in the United States for the past seven years, he was not "seeking admission" at the time of his arrest, which occurred well within the country. *See* Dkt. No. 1 at ¶¶ 15-16; Dkt. No. 6 at 2. Thus, the Court finds that Section 1226(a) is applicable to Petitioner's detention and not Section 1225(b).

**B. Due Process**

"Given that Petitioner's detention is pursuant to Section 1226(a), he is entitled to certain process." *Aguiar Olivares v. ICE Custodian*, No. 26-cv-203 (AMN), 2026 WL 686090, *7 (N.D.N.Y. Mar. 11, 2026). When determining the adequacy of process in the context of civil immigration confinement, courts weigh the three factors articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976): "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Gaspar v. Akshar*, No. 9:26-cv-118, 2026 WL 699369, at *8 (N.D.N.Y. Feb. 17, 2026) (quoting *Velasco Lopez*, 978 F.3d at 851 (quoting *Matthews*, 424 U.S. at 335)).

Here, the Court finds that Petitioner's due process rights were violated. First, Petitioner has established a liberty interest in being released from imprisonment. That interest "is the most significant liberty interest there is—the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (quoting *Velasco Lopez*, 978 F.3d at 851). "And Petitioner's liberty interest is even more heightened because the deprivation of his liberty does not stem from any criminal adjudication." *Nany v. Blanche*, No. 26-cv-1187, 2026 WL 1842635, at *4 (W.D.N.Y. June 26, 2026).

The Court next considers the risk of erroneous deprivation. Respondents acknowledge that the arresting ICE officer did not make an individualized determination as to Petitioner's detention. Dkt. No. 6 at 2 n. 3. While Respondents assert that Petitioner was served with an I-200 administrative warrant at the time of his arrest, that document does not refer to any specific charging document to initiate removal proceedings against Petitioner. *See* Dkt. No. 6-5. In fact, Plaintiff was only served an NTA *after* he was detained and transported to the BFDF in Batavia. *See* Dkt. No. 6-3 at 1-3. The Court therefore finds that the use of an administrative warrant to arrest and detain Petitioner without removal proceedings having been commenced was improper, resulting in a high risk of erroneous deprivation of Petitioner's liberty. *See Parada Cruz v. Mullin*, No. 26-CV-1110-SJB, 2026 WL 1027441, at *2 (E.D.N.Y. Apr. 16, 2026) ("If ICE is going to use an arrest warrant, then there must be removal proceedings initiated before or at the time of the arrest. Such proceedings are begun through the issuance of a [NTA]. There is no 'leeway.' If ICE wants to use a warrant, it must have a valid NTA in place.").

Finally, while the Government has a strong interest in ensuring that noncitizens appear at future immigration proceedings and preventing danger to the community, "the Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor

a risk of flight." *Velasco Lopez*, 978 F.3d at 854. Here, the Court finds that the Government's interest is minimal and fails to overcome the weight of the first two factors because Petitioner has been living in the United States for seven years, Petitioner has a valid work permit and a pending asylum application, and Respondents have not argued that Petitioner is a danger to the community or a flight risk. Additionally, the Court notes that Petitioner's pending state charges do not here outweigh his interest in personal liberty and the risk of erroneous deprivation. *See Ipina Hernandez v. Genalo,* No. 26-CV-137, 2026 WL 507739, at *6 (S.D.N.Y. Feb. 22, 2026) (finding same where petitioner had, *inter alia*, pending state law charges, including two misdemeanors, a violation, and an infraction, all arising from a traffic stop).

### C. Appropriate Remedy

"Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008) (citations omitted). Respondents argue, however, that the proper remedy here is an individualized bond hearing before an Immigration Judge. Dkt. No. 6 at 3-5.

The Court disagrees. On the facts presented, a bond hearing is not necessary, and immediate release is the appropriate remedy for the due process violation in this matter. *See Sisalema Rea*, 2026 WL 1959270, at *4; *Parra v. Favro*, No. 26-cv-363, 2026 WL 1030870, at *7 (N.D.N.Y. Apr. 16, 2026) (collecting cases).

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Petition for writ of habeas corpus, Dkt. No. 1, is GRANTED; and the Court further

**ORDERS** that Petitioner shall not be re-detained without adequate notice to Petitioner and without an opportunity to be heard at a hearing where the Government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a) and the burden to demonstrate by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk;[3] and the Court further

**ORDERS** that pending the issuance of any final removal order against Petitioner, Respondents are also enjoined from denying him bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances.

**IT IS SO ORDERED.**

Dated: September 9, 2026
Albany, New York

Anne M. Nardacci
U.S. District Judge

[3] Respondents also argue that in any such bond hearing, the Petitioner should "bear the burden of demonstrating that he does not present a danger to the community or a risk of flight and that his release is otherwise warranted." Dkt. No. 6 at 4. The Court disagrees. A majority of courts in this circuit, including this one, have held that that absent "any individualized assessment or identifiable government interest regarding Petitioner's initial detention, due process requires that the Government bear the burden of demonstrating dangerousness or flight risk by clear and convincing evidence at any bond hearing." *Hassan v. Bondi*, No. 9:26-cv-00319, 2026 WL 891602 (N.D.N.Y. Apr. 1, 2026) (Sannes, C.J.) (citing *Lieogo v. Freden*, No. 25-cv-06615, 2025 WL 3290694, at *5-6 (W.D.N.Y. Nov. 26, 2025)); *see also Quintanilla v. Decker*, No. 21-cv-417, 2021 WL 707062, at *3 (S.D.N.Y. Feb. 22, 2021) (joining the "overwhelming consensus of judges in this district in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention") (internal quotations omitted).